## Young v. Young's Adm'r et al.

May 18, 1943.

A. F. Childers for appellant.

J. J. Moore, W. K. Steele, and Roscoe Vanover, Jr., for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

J. M. Young is challenging the action of the chancellor in sustaining exceptions to the Commissioner's report allowing him a debt evidenced by a $3,000 note, with interest from October 28, 1933, against the estate of his deceased son, W. V. Young, the estate of Earl Scott, and T. M. Stratton. The action was instituted originally by the Pikeville National Bank & Trust Company as the administrator of the estate of W. V. Young. The widow of the deceased and the creditors, including J. M. Young, were made parties defendant. The appellant answered setting up a claim of $1,135 against his son's estate. However, an itemized statement of his claims against his son's estate, filed as an exhibit, included the aforementioned $3,000 note. Since the attorneys who filed that answer for the appellant also represented the estate of Earl Scott and T. M. Stratton, they withdrew as counsel for the appellant. Subsequently, the appellant filed an answer and cross petition against the representatives of the estates of his son and

Earl Scott and T. M. Stratton, wherein he sought judgment against them for the $3,000 and interest from October 28, 1933. On March 11, 1940, an amended reply was filed by the administrator of W. V. Young's estate, which set forth that:

"Plaintiff for further reply and further defense to the alleged cause of action of J. M. Young against the estate of W. V. Young says, that several years prior to the death of the said W. V. Young, that the said J. M. Young was sued in the Pike Circuit Court by certain taxpayers of Pike County, Kentucky, to recover from him more than $20,000.00 alleged to have been over payments made to the said J. M. Young by Pike County, Kentucky, while he was serving as jailer of said County and that said sums represented amounts collected by the said J. M. Young from Pike County, over and above the constitutional limit of $5,000.00 per annum while he was serving as jailer of said county; that the said J. M. Young in anticipation of judgment being rendered against him in said litigation and in order to avoid, defeat and escape the payment of any judgment that might be rendered against him in said litigation, transferred and conveyed all of his real estate to his various children and transferred, assigned and delivered to his son, W. V. Young, deceased, all notes, choses in action and other evidences of indebtedness which was owing to him, and that thereafter the said J. M. Young never at any time listed any of said property, including the notes sued on herein for taxes, or paid any taxes thereon, including the notes sued on, and plaintiff therefore denies that the said J. M. Young was, or is the owner of said notes, and by reason of said transfers to his son, W. V. Young, and his failure to list the same for taxation with the taxing authorities of Pike County in which he resided, is here plead as a complete bar and defense to his alleged cause of action against the estate of W. V. Young, deceased."

The appellant did not attempt to file a rejoinder to the amended reply until the latter part of November, 1940, and after the case had been submitted on the exceptions to the Commissioner's report, and the chancellor had announced his findings in open court. Obviously, the

action of the chancellor in refusing to permit the rejoinder to be filed was proper, because of the late date at which it was tendered. There was no response, therefore, to the pleading alleging the appellant did not own the $3,000 note. However, we have reviewed the circumstances surrounding the execution of the note in question, and the evidence concerning it, and have reached the conclusion the chancellor properly ruled against the appellant.

J. M. Young was jailer of Pike County. He was active in Republican politics in that County, as were his son, W. V. Young, Earl Scott and T. M. Stratton. W. V. Young had been defeated for county clerk in the Republican Primary by W. E. Blackburn, who was backed by T. M. Stratton. Earl Scott was circuit clerk of Pike County and was the Republican nominee for the office. The note in question was made payable to W. V. Young. It was signed by T. M. Stratton and bears the endorsements of Earl Scott and W. V. Young. It was dated October 28, 1933, and made payable to the order of W. V. Young in 365 days.

Stratton's story as to the execution of the note is that, shortly before the November election, the Republicans became concerned about their chances and he approached W. V. Young with the proposition that Blackburn would give him one-half of the fees from the county clerk's office, provided Young and his family would become actively engaged in behalf of the Republican ticket. He said the note was executed for the purpose of guaranteeing Blackburn's promise to Young.

Young became active for the ticket, but on the day before the election he and the other Republican leaders became disheartened and Young went about collecting money which he had distributed to the various precincts. Incidentally, the appellant contends that, since Young was handling money, and there is testimony to the effect that he was gathering it up the night before the election, it necessarily follows he had raised money on the note from his father. We do not follow this line of reasoning, however, because Young may have already had the money or may have obtained it from other sources. There is also testimony for the appellees to the effect that the appellant and W. V. Young had a joint lock box, both of them having a key to it; that W. V. Young had the note in his possession and offered to trade

it to Earl Scott in 1935 in a garage deal; that the appellant was unable to show where he got the money which he said he turned over to his son; that he first stated that he got the note from his son in July or August before the primary, whereas the note was not executed until the following October 28th; that he was threatened with litigation over alleged excessive fees which he had collected as jailer, and had transferred and assigned all of his property to his children, giving to W. V. Young all notes and choses in action; and that, though the note was due October 28, 1934, he made no effort to collect it from W. V. Young, Earl Scott and T. M. Stratton until after both his son and Scott had died.

The testimony for the appellant is that, when his son first came to raise money on the note, he told him he would not let him have it unless Scott signed it, which Scott did; that he got the note when he turned over the money to his son; that he carried it in his pocket until this litigation began; that, because of the threatened litigation over the fees of his office as jailer, he carried large sums of cash in his pocket; that he never gave the note to his son; that he did not take the note out of the lock box after his son's death; that he had attempted to use the note as collateral for a loan in 1936 or 1937; that he did not know what his son planned to do with the money he let him have on the note, though he suspected he might use it in the election; and that he did not attempt to collect the note because one of the parties was his son, and the others were his friends and associates, until he needed money.

It is insisted, since the note was a negotiable instrument, the burden was on the appellees to show there was a failure of consideration. Stratton's story as to its execution seems to be a plausible one, and there is no proof whatever contradicting that as to the agreement made between Blackburn and W. V. Young relative to dividing the receipts of the county clerk's office in the event of Blackburn's election. While W. V. Young probably put up some of the money which he was handling before the election, there is no testimony, other than that of the appellant, showing he got money from him at that time. The testimony of J. M. Young is vague and indefinite as to where he got the money which he said he let his son have on the note, and as to when he let him have it. Then there is the proof that W. V. Young had

the note in 1935 when he offered to trade it to Earl Scott in a garage deal, though, as we have indicated, the appellant said he had the note in his pocket from the time it was delivered to him in 1933 until this litigation began. There are also the significant circumstances showing the appellant and W. V. Young used the same lock box and that the appellant was attempting to dispose of or cover up his property because of the aforementioned threatened litigation over the fees of his office as jailer.

It is our rule not to disturb the finding of the chancellor when we have no more than a doubt as to the correctness of his ruling on a question of fact. Lashley v. Lashley, 276 Ky. 689, 125 S. W. (2d) 247.

Having no more than a doubt as to the correctness of the ruling in the case before us, it is our conclusion that the judgment should be and it is affirmed.